BARNETTE, Judge.
Plaintiff-appellee Anna Milano was involved in an automobile accident on June 15, 1964. She was a student passenger in a driver training vehicle owned by Victor Manning, who was at that time doing business as the U. S. Safety Driving Institute. Manning was insured by The Employers’ Liability Assurance Corporation, Limited.
The Manning vehicle, driven by a Manning employee, was struck from the rear by a vehicle owned and driven by Salvadore M. Saia. Saia carried no liability insurance on his automobile.
Mrs. Milano and her husband Carl brought suit against Saia, Manning, and Employers’ Liability, and also against Milwaukee Insurance Company of Milwaukee, Wisconsin, the Milanos’ insurer, on the uninsured motorist clause of their policy. Plaintiffs alleged that as a result of the accident Mrs. Milano suffered a cervical strain, a large hematoma on her thigh and knee, and aggravation of a preexisting nervous condition. Since the accident Manning has died, and his widow and heirs have-been substituted as parties defendants in his. place.
Defendant Saia’s negligence was not seriously denied in the trial court. However *842 defendant Victor Manning was clearly free from negligence in the matter.
The trial judge ruled in favor of the plaintiffs, Mr. and Mrs. Milano, against defendants Saia and Milwaukee. He awarded general damages to Mrs. Milano in the amount of $3,000 against Saia and Milwaukee and special damages to Mr. Milano in the amount of $344 against Saia alone. He also awarded judgment in favor of Milwaukee over and against Saia for all that Milwaukee was condemned to pay plaintiffs. The suit against the Mannings and their insurer, Employers’ Liability, was dismissed.
Saia and Milwaukee now bring this appeal asking for a reduction in the amounts awarded by the trial court. The issue of liability plays no part in this appeal. The case as it is before us now involves only the question of the amount of general and special damages awarded to the plaintiffs by the trial court.
We are not unmindful of the care with which an appellate court must proceed in attempting to evaluate an award made by the trial judge. In a recent statement on this matter in Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127, 131-132 (1967), the Supreme Court said:
“We recognize that in cases of this type the Constitution makes it the duty of appellate courts to review both the law and the facts, but in their examination of the fact these courts must give effect to the basic law set out in Article 1934(3) of our Civil Code that in the assessment of damages in cases of offenses and quasi offenses ‘much discretion must be left to the judge or jury’. This law is plain and means what it says, and it is the duty of all appellate courts to follow it. Under this rule the amount of damages assessed by the judge or jury should not be disturbed unless the appellate court’s examination of the facts reveals a clear abuse of the discretion vested in the lower court.”
In the case before us we feel compelled to reduce the quantum of damages awarded by the trial judge. From a careful review of the medical testimony and all the evidence it is our opinion that there was a clear abuse of discretion.
As to the injuries suffered by Mrs. Mil-ano, the record indicates that she presented herself to the emergency room of the Ochs-ner Clinic the morning after the accident. She complained of considerable pain in her neck area and of pain in her knee. At trial she stated she was certain it was her left knee which she had hurt. The doctor’s report showed that it was her right knee which had been injured. X rays of her neck and knee taken in the emergency room, and later examinations, failed to show evidence of broken bones. Mrs. Milano testified during the trial of this matter, on October 10, 1966, that she was still experiencing pain in the area of her neck.
Dr. Ashley S. Ross, an orthopedist on the staff of the Ochsner Clinic, testified that he saw plaintiff on seven different occasions for her complaints. He stated that in his opinion plaintiff suffered a moderately severe whiplash injury and a large hematoma on her knee. He testified that plaintiff’s knee complaints had subsided by her third visit, July 24, 1964. He saw her for the last time on April 22, 1965, and at that time he was of the opinion that there was no pathological process which should continue to cause her pain. Dr. Ross admitted that at no time could he find objective signs upon which he could base his diagnosis of cervical strain. He stated that he did not find evidence of muscle spasm in the neck or elsewhere. His findings were based on the subjective symptoms as expressed by Mrs. Milano herself. He treated Mrs. Milano “conservatively,” directing her to use heat applications and analgesics.
Dr. Paul J. Murison, an expert in the field of internal medicine, testified that he had been treating Mrs. Milano for several years prior to the accident of June 15, 1964, for problems which he felt were due to ten *843 sion and nervousness. He had seen her in March, 1964, and found her condition to be improved. However, when he examined her in July, 1964, after the accident, he found that her overall nervous condition had worsened. He hospitalized her in September, 1964, to determine the cause of her general poor health. He was of the opinion that the accident did play some part in this hospitalization but he found it hard to determine to what extent this was true.
While we recognize the widely applied legal principle “a tort feasor takes his victim as he finds him,” we do not think it is just under the circumstances in this case to hold defendants responsible for all of Mrs. Milano’s chronic aches and pains.
The record clearly indicates that Mrs. Milano had for a long period of time suffered from a number of various illnesses. She had recently undergone an operation to rectify a troublesome sinus condition. She had had .problems with her legs and her back on occasion. She had labored under a nervous condition for years and had taken medicine to alleviate it. She appeared to be a person who was overly concerned about her physical condition and perhaps at times easily disturbed by minor discomforts. There is really nothing to indicate that the multitude of vague complaints which she related to Dr. Murison in July, 1964, were a result of, or appreciably aggravated by, the accident. It is much more likely that these general complaints were just part of her overall picture of poor health which preexisted the accident.
It is interesting at this point to note that Mrs. Milano continued her course of driving instructions after the accident and in fact received another two-hour driving lesson on June 17, 1964, two days after the accident. In all she completed a total of 16 two-hour lessons during the period June 17 to July 28, 1964.
This is not to say that plaintiff did not sustain a cervical strain as testified to by Dr. Ross, but it did not disable her or prevent the immediate resumption of her normal activities. The vague complaints which she related to Dr. Murison, her personal physician, should not have been given great weight by the trial judge in assessing the damages due her.
Under the circumstances of this case we are of the opinion that Mrs. Milano would have been adequately compensated by an award of $2,000 and the $3,000 decree was a clear abuse of the trial court’s discretion under the facts of this case.
As to the special damages of $344 awarded to Mr. Milano, we are of the opinion that these are also excessive. The trial judge in his reasons for judgment stated that “the special damages awarded are for those items of medical expense, which the court feels, with some certainty, are attributable to the injuries sustained in the accident of June IS, 1964.” While we find no fault with his method for assessing special damages, we cannot ascertain which items he in fact included in reaching the $344 total.
Clearly not all of the medical charges which the plaintiffs submitted as items of special damages were attributable to the accident. Plaintiffs’ own witness Dr. Muri-son testified that while all of the charges by Ochsner Clinic during the period June 23, 1964, through August 20, 1964, which to-talled $147, were referable to the accident, only 40 percent of the remaining charges were so attributable.
The total of these remaining charges was $358.25, and 40 percent of this figure is $143.30. This added to the $147 figure would equal $290.30. Apparently then the trial judge made an error in his calculations in reaching a total of $344 as special damages.
For the foregoing reasons, the judgment of the district court awarding Mrs. Anna Milano the sum of $3,000 is amended by reducing same to $2,000. The award of $344 *844 to Carl Milano is reduced to $290.30. In all other respects the judgment is affirmed. Costs of this appeal are assessed against defendants.
Amended and affirmed.