BARNETTE, Judge.
Plaintiffs, Mrs. Margaree Kimbrell Waldo and her husband Ednard T. Waldo, brought this suit because of injuries Mrs. Waldo suffered when allegedly struck by a taxicab. The trial judge found for the plaintiffs and awarded damages in the amount of $1,500 for pain and suffering and $281 for medical expenses.
The plaintiffs appealed seeking an increase in the quantum. The defendants, Toye Brothers Yellow Cab Company, a commercial partnership; George A. Toye and George H. Toye, individually and as partners in this firm; and the cab driver Julius C. Hoey, Jr., have answered the appeal praying for reversal of the judgment and alternatively for a reduction of the quantum.
The plaintiffs contend through their appeal that the trial court was in error in disallowing the items of damage claimed to be due for an alleged traumatic neurosis suffered by Mrs. Waldo as a result of the alleged accident. The defendants deny all liability but alternatively argue that the trial court was correct in finding as a fact no causal connection between the alleged accident and the alleged neurosis. Further, by way of answer to the appeal defendants contend that the award of $1,500 for the physical injuries sustained was excessive and should be reduced. They also contend that the allowance of $281 for medical expenses should be reduced to- $81 since $200 of the total amount was charged for examination and treatment of the alleged neurosis which the trial court found not to be causally connected with the alleged accident.
The incident which precipitated this litigation occurred at approximately 6:30 p. m., on February 11, 1963. Mrs. Waldo had been walking from her place of business in the French Quarter and was attempting to cross Royal Street at its intersection with Toulouse Street. She stepped from the curb onto Royal when the taxicab driven by Hoey turned right from Toulouse onto Royal. Neither Hoey nor Mrs. Waldo seemed completely certain as to- whether the cab actually made contact with Mrs. Waldo, but defendants do- not seriously deny that the action of the cab did cause her to fall. The trial judge was himself unable to determine if the taxicab actually struck Mrs. Waldo, but he was just as certain that it did cause her to fall. He stated it in this manner in his reasons for judgment:
“ * * * Whether the taxicab actually struck plaintiff, or whether it came so near to do so as to cause her to slip and fall in her attempt to avoid being so struck, causes the Court to- conclude that there was negligence on the part of the taxicab driver * *
We find no error in this conclusion. Hoey, the driver of the taxicab, stopped on Toulouse Street before entering the intersection of Royal Street to await traffic clearance. Royal Street is a one-way street leading toward Canal Street, so all traffic was approaching from Hoey’s left and it was not necessary for him to look to his right to check on vehicular traffic. He was concentrating his attention on vehicular traffic to his left rather than on pedestrians. When a break came in the line of cars on Royal Street, he began his right turn onto Royal Street. At that moment he observed that the nearest vehicle to his left on Royal Street was moving faster than he first estimated. This circumstance was his chief concern and was aggravated by a van type truck parked on Royal Street to his right, which prevented his turning into the lane nearest the curb. His preoccupation with this traffic situation was the cause of his not observing with the care required of a prudent driver, the movement of pedestrians across Royal Street. This, we think, explains his failure to see Mrs. Waldo. The trial court was correct in finding him negligent in this respect. Collins v. Toye Brothers Yellow Cab Company, 183 So.2d 396 (La.App. 4th Cir. 1966), and cases cited therein.
*127 It is defendants’ contention that even if Hoey was negligent in this situation, Mrs. Waldo was herself contributorily negligent and thus should have been denied recovery. We find little merit in this contention. As we have seen, Mrs. Waldo was injured while attempting to cross a busy street. However the vehicle which caused her injury was not one which had been traveling for some distance down this street, but rather one which turned onto the street from a controlled intersecting street to the side and behind Mrs. Waldo. There is no evidence that she darted into the path of the turning vehicle, or did anything which was improper under the circumstances. We must find then, as did the trial judge, that defendants have failed to establish their affirmative defense of contributory negligence.
We now come to what actually is the heart of this appeal. Plaintiffs contend that as a result of this accident Mrs. Waldo suffered a traumatic neurosis which did for a considerable length of time incapacitate her. Thus they contend that the award of $1,500 for pain and suffering should be substantially increased.
The trial judge found as a fact that Mrs. Waldo did not suffer a neurosis as a direct result of the accident. Further he found that the accident did not aggravate any previously existing neurotic condition. He was apparently impressed by the fact that Mrs. Waldo did not first complain of a nervous condition to her treating physician until at least four to eight weeks after the accident, and in fact did not actually receive psychiatric aid until over two years after the accident. Her alleged nervous condition involved recurring nightmares and insomnia. When her treating physician advised her some six months after the accident to seek psychiatric treatment, she failed to do so for a long period of time. It was not until August, 1965, that plaintiff sought psychiatric help for her alleged condition.
Two psychiatrists testified on Mrs. Waldo’s behalf, one of whom had seen her on one occasion, the other on ten occasions. A third psychiatrist, who had seen plaintiff on four occasions, testified on defendants’ behalf. The “plaintiffs’ ” psychiatrists were of the opinion that Mrs. Waldo was suffering from a traumatic neurosis causally connected to the accident. The “defendants’ ” psychiatrist was of the opinion that plaintiff’s condition was not related to the accident. He was impressed by the length of time from the accident until the condition was first reported to a physician ; the manner in which Mrs. Waldo related her history to him; her general reluctance to see him at all; and particularly the serious strains under which she had been living which he recognized as probable causes of her neurotic symptoms. The record reveals that Mrs. Waldo, a middle-aged person, had remarried just a short time prior to the accident. Her husband had been suffering from a painful hip injury rendering him somewhat incapacitated and in a measure physically dependent upon her. Further Mrs. Waldo was involved' in a business association which had become burdensome and unpleasant to her. All of these factors contributed to her upset condition.
The trial judge recognized the conflict of opinion between the testifying psychiatrist, and he stated in his reasons for judgment:
“ * * * [T]he Court is of the opinion that the plaintiff has not suffered neurosis as the direct result of the alleged accident. Nor does the Court feel that the accident aggravated any previously existing neurosis.
“The testimony of the psychiatrists who have testified herein are conflicting, and none of these ‘experts’ saw the plaintiff before the accident, nor did they have the opportunity of discussing her with anyone who may have had some association with plaintiff prior to the accident — with the possible exception of plaintiff’s husband. Nor did the psychiatrists see the plaintiff until some two *128 years or mo-re following the date of the accident, and between the date of the accident and the trial of this matter plaintiff was in an almost continual state of concern over both her financial affairs and the state of health of her husband and other members of her family.
“The sole basis for the testimony of the psychiatrists, offered by plaintiff to support her contention that she suffered a traumatic neurosis, has to be based upon that which plaintiff told them. The Court therefore concludes that this results in nothing more than self-serving statements or testimony. The Court is unable to give consideration to the testimony to the effect that plaintiff was neurotic, and therefore needed the services of a psychiatrist, simply because she would not go to see her family (or treating) physician.”
After a careful review of the record we can find no manifest error in the trial judge’s opinion in this regard. He had the opportunity to- hear the conflicting testimony of these psychiatrists and the facts upon which they based their opinions, and we place great weight on his determination. Thus we concur in his decision that the neurotic condition which plagued Mrs. Waldo was not causally related to, or aggravated by, the accident.
This leaves us with a consideration of the general and special damages which were awarded for the physical injuries which Mrs. Waldo indisputably suffered.
As to the general damage award of $1,500, it is the defendants’ cohtention that this amount should be reduced. With this we cannot concur. The record reveals that Mrs. Waldo suffered a moderate bruise of the left hip and thigh, an abrasion and mild sprain of the left elbow and a mild whiplash type injury of the neck. In addition she suffered very severe headaches for several months after the accident. These headaches occurred anywhere from four to fourteen days apart. They lasted for at least a whole day at a time, and sometimes longer. Her treating physician testified that she had recovered from the greater part of her injuries within a few weeks following the accident, and only the headaches persisted as late as August of the year of the accident. We must therefore conclude that an award of $1,500 for pain and suffering under these facts cannot be disturbed as being manifestly erroneous.
However as to the special damage awarded for the medical expenses incurred in the amount of $281, we do find merit in defendants’ complaint. They contend in their answer to the appeal that the special damage award did in fact include the fees of Mrs. Waldo’s two psychiatrists. Therefore they argue that as the court found as a fact that Mrs. Waldo’s neurosis was not accident related these fees were not proper items of special damage.
The pertinent entry in the record regarding these fees is found in a statement by Jerald N. Andry, plaintiffs’ attorney, made during trial.
He stated:
“MR. ANDRY: Your Honor, we have three stipulations to make for the record. It is stipulated by and between counsel that the medical bill of Dr. Edward Knight [the psychiatrist who saw Mrs. Waldo on one occasion] is $25.00 and of Dr. Alvin E. Johnson [the general practitioner who was Mrs. Waldo’s treating physician], $81.00 and that the medical bill of Dr. Gene Usdin [the psychiatrist who saw Mrs. Waldo on ten occasions] was $175.00.”
Defendants’ counsel argues that this stipulation was simply for the purpose of setting the amounts of the fees themselves, so as to forego the necessity for plaintiffs to go through the motions of formally introducing bills to prove the amounts of these medical fees. Therefore defendants’ counsel contends that the trial judge was in error in simply awarding the lump sum *129 of $281 without investigating the nature of these charges.
As to the $81 fee of Dr. Johnson there is, of course, no disagreement. This was simply a fee for the medical services he rendered in administering to Mrs. Waldo’s physical injuries sustained in the accident. However the $200 representing Dr. Knight’s $25 fee and Dr. Usdin’s $175 fee is subject to some question as items of special damages in this case.
In reading the stipulation regarding these fees as quoted above, we agree with defendants’ counsel that the stipulation was solely for the purpose of establishing the amount of the fees, and in no' way bound defendants to pay them. The trial judge evidently made an inadvertent error in assessing these as damages, as he apparently thought the stipulation was for the purpose of admitting defendants’ liability for them. This can be seen from the way in which he set out the special damages in his reasons for judgment:
“It has been stipulated that plaintiff’s medical expenses amounted to $281.00, so that there will be judgment herein in favor of plaintiff and against defendant for $1781.00 with legal interest from date of judicial demand and all costs of these proceedings.” ■ (Emphasis supplied.)
We find that the jurisprudence is quite clear that a plaintiff cannot recover medical expenses incurred for treatment of a condition not proved to have been caused by defendants’ act. Milano v. Saia, 205 So.2d 841 (La.App. 4th Cir. 1968); Marsalis v. La Salle, 94 So.2d 120 (La.App. Orleans 1957). In this case the trial judge quite clearly found that Mrs. Waldo’s neurotic condition was not connected to the accident. It was thus obviously an error on his part to assess the medical expenses related to this condition against the defendants as special damages. In view of this we hold that the special damages in this case should be reduced by $200, from $281 to $81.
For the reasons hereinabove stated, the judgment of the trial court is amended to reduce the damages awarded by $200, and in all other respects is affirmed. Appellants are charged with the costs of this appeal.
Amended and affirmed.