KLEES, Judge.
This is an appeal from a judgment granting a workmen’s compensation claim by a hotel-airport driver against his employer for injuries resulting from an accident occurring in the course and scope of his employment.
Appellee was employed by Southern Tours, Inc., as a hotel-airport driver. His duties consisted of picking up passengers at various downtown hotels and driving them to the airport, as well as making return trips. On December 22, 1978, he allegedly dropped a passenger’s suitcase which he was removing from the rear of the company van on his right foot. At the time, appellee was suffering from a diabetic condition and poor circulation. As a result of the trauma, the toe of his right foot was amputated. Gangrene subsequently developed which led to the amputation of his right leg below the knee.
The court found in favor of appellee, awarding him 175 weeks compensation at 66% of his wages for the loss of his leg and $10,340.95 for medical expenses. The court denied appellee’s request for penalties and attorney fees.
Appellant argues that the evidence adduced at trial did not lawfully support a finding that appellee sustained an accident susceptible of compensation. They contend that the fact that appellee completed his immediate task of unloading the van without interruption, completed the day’s work and then worked a full shift the next day is indicative that he did not drop a suitcase on his foot. Appellant bases this contention on the testimony of Dr. Menendez who stated that because of appellee’s diabetic condition and the impaired circulation in his leg, his foot would be extraordinarily sensitive to pain. Such a blow to the foot, the doctor explained, would cause it to hurt immediately and for an extended period of time. Dr. Menendez stated that a bruise would normally appear in such a situation. Appellant also points out that appellee did not report the matter to his employer, nor mention it to any co-workers.
We do not agree with appellant’s position and find, as did the trial court, that a compensable injury did occur.
Appellee’s testimony was not the only evidence the trial judge relied on. Appel-lee’s son testified that he had seen his father’s toes after the incident and that they were bruised and swollen as though something had fallen on them. He also informed the court that he reported the incident of his father dropping a suitcase on his toe while at work to Southern Tours. This was done at his father’s request, approximately a month or two prior to the toe amputation. The fact that the incident was reported by the son to the general manager of Southern Tours was verified by the testimony of the general manager himself.
Based on all of the testimony presented, we conclude that the trial court did not err in finding that an accident did in fact occur.
Appellant further argues that even if the occurrence alleged by appellee did happen, appellee did not sufficiently prove a causal connection between the occurrence and compensable injury. They support this argument with the testimony of Dr. Ruli and Dr. Menendez of the possibility of the onset of gangrene without trauma, or with some minor, non-dramatic irritation.
The fact that a condition is preexisting does not preclude recovery for the disabled employee; the employer takes the employee as he is, and the fact that the disease alone might have disabled the employee in its ordinary course of progress is not the inquiry. The employee’s disability is compensable if a preexisting disease or condition is activated or precipitated into disabling manifestations as a result of a work accident. Hammond v. Fidelity and Casualty Company of New York, 419 So.2d 829 (La.1982). Dr. Ruli indicated that if a diabetic with poor circulation would stub or nick his toe causing the nail to go into the flesh, infection could start and the chain reaction could occur ultimately developing into gangrene. He admitted that a blow to *427 the foot with a heavy suitcase, as in appel-lee’s case, could have the same effect.
We rely on Dr. Ruli’s testimony in discarding appellant’s argument that the gangrenous condition was spontaneous. We adopt the trial court’s findings in his reasons for judgment wherein the trial judge found a causal relationship:
“This Court is of the opinion that the plaintiff did in fact injure his toe or right foot by dropping a piece of luggage on his toe or foot. This Court is mindful that there is testimony by witnesses for the defendant which challenges whether an accident did in fact happen on the job. However, weighing all of the testimony and considering the fact that plaintiff is not a sophisticated individual who would recognize that he should have promptly reported the accident to his employer, this Court believes that is more likely than not that plaintiff is telling the truth. The Court specifically rejects the premise of Counsel for defendant that plaintiff ‘admitted he frequently struck his leg or foot with luggage’, and therefore he (plaintiff) should not have suffered any ill-effect from this latter accident. This Court is impressed with the letter from Dr. Menendez, (stipulation # 4) which indicates that ‘the lesion followed the injury with the causal relationship being implied’. The doctor was unequivocal in his prior conclusion ‘... from a medical standpoint his subsequent course would logically have to be considered as having been precipitated by the injury’. When one engrafts these two statements onto the substance of Dr. Menendez’s deposition (stipulation # 3), the conclusion is obvious that the incident at work on December 22, 1978 triggered the physiological deterioration that resulted in the amputation of plaintiff’s lower right leg.”
Appellant also contends that the extent of appellee’s disability, i.e., the amputation of his right leg, was not causally connected to the alleged accident, but was a result of appellee disobeying medical advice. They allege that following appellee’s discharge from the hospital, after his right toe amputation, he got out of bed and walked around, contrary to the doctor’s orders, thereby causing additional injury which resulted in the amputation of the leg.
We refute this argument. Dr. Menendez testified that appellee was a very cooperative patient who followed doctor’s orders exactly. In fact, he added, appellee would not even get out of bed when the physiotherapist came to his house to fit an artificial limb because he had been told by Dr. Menendez to stay in bed. Both Dr. Ruli and Dr. Menendez stated in their depositions that when appellee was ready to be discharged from the hospital, they noticed a small purplish spot on the ball of his foot. Both doctors testified that the spot was in all probability indication that the infection was returning.
It is apparent from this testimony that appellee’s condition took a turn for the worse prior to his discharge from the hospital and that the necessity of the subsequent amputation of his leg could not have been a result of ignoring medical instructions.
Appellee answered the appeal seeking an increase in the medical costs awarded, alleging that the trial court erred in not following the stipulation of counsel for both parties as to the amount of attributable medical bills of $18,564.57, and awarding only $10,340.95.
Appellee is correct in that the following stipulation was made: “... [W]e have a stipulation regarding the medical bills which are attributable to Mr. Adams’ medical treatment as a result of this alleged incident and that the total is $18,564.57

The trial judge’s comments relative to the Medical Bills are as follows:
“This Court believes that plaintiff is required to prove that the medical bills he incurred were an outgrowth of and related to the work injury. Several items of costs included in stipulation # 5 are not relevant to this cause. Unfortunately, the Court did not have the benefit of an expert upon whom the Court could rely. *428 Dillon v. Rice, 375 So.2d 742, 747 (1979) Cheramie v. Jones, 327 So.2d 601 (1976) See also the rationale of: Rayfield v. City of N.O. 398 So.2d 1243 (1981)”
A trial court is bound to render judgment in accordance with stipulations of the parties where the stipulations were not in derogation of the law. General Investments, Inc. v. Thomas, 400 So.2d 1081 (La.Appl. 4th Cir.1981).
However a plaintiff cannot recover stipulated medical expenses incurred for treatment of a condition not proved to have been caused by defendant’s act. Waldo v. Toye Brothers Yellow Cab Company, 210 So.2d 125 (La.App. 4th Cir.1968). In Waldo, supra, the trial court had awarded plaintiff stipulated medical costs which included medical expenses relating to plaintiff’s neurotic condition. The appellate court reduced the award, holding that because the trial judge clearly found plaintiff’s neurotic condition was not connected to the accident, those expenses could not be recovered.
In the present case, stipulation # 5 consisted of the following:
1. Montelepre Hospital Bill, 12-28-78 to 1-18-80 $7,014.50
2. Mercy Hospital, 12-26-78, Emergency Room Chg. 20.00
3. Dr. Jack P. Ruli, 12-26-78 to 2-24-79 275.00
4. Mercy Hospital, 1-31-79 to 2-24-79 7,863.74
5. Dr. C.V. Menendez, 12-31-79 to 4-17-79 2,388.00
6. Jefferson Orthopedic, 6-13-79 934.12
7. Drugs, 3-25-79 to 5-30-79 69J1 TOTAL $18,564.57
We find that all of these items relate to plaintiff’s injuries beginning with the treatment of his right toe and continuing to and following the amputation of his right leg. As the trial court had previously concluded that “the incident at work on December 22, 1978 triggered the physiological deterioration that resulted in the amputation of plaintiff’s lower right leg”, he is bound to honor the stipulation made to the effect that the medical bills attributable to plaintiff’s medical treatment. We do note that plaintiff incurred other injuries and their resultant expenses. But in his answers to a second set of interrogatories filed in the record, plaintiff specifically indicates that those injuries were “not attributable to accident at bar.”
In Wickliffe v. Cooper & Sperrier, 108 So. 791 (La.1926), our Supreme Court found that stipulations between the parties in a specific case were binding upon the trial court in the disposition of that case, where the stipulations were not in derogation of the law. The Supreme Court reasoned that:
“The trial court is in error if he refuses a stipulation as relating to the agreements between the parties affecting only their own rights and obligations towards each other, so long as these agreements do not impinge upon or interfere with the court’s general powers, duties or peroga-tives.
A plaintiff and defendant, sole parties to a litigation, may agree that plaintiff shall have judgment as prayed for ... and the judgment must not only carry out but enforce that agreement, because that agreement then becomes the law of the case." (emphasis added) R.C.C. art. 1901, 1764
See also: General Investment, Inc. v. Thomas, 400 So.2d 1081 (La.App. 4th Cir.1981).
For the foregoing reasons, the judgment of the trial court is affirmed in part and amended in part to increase the award for reimbursement of medical expenses to Eighteen Thousand, Five Hundred, Sixty-Four and 57/100 ($18,564.57) Dollars, together with legal interest from date of judicial demand. All costs to be borne by appellant.
AFFIRMED IN PART, AMENDED IN PART.