559 So.2d 527 (1990)
Loyd COCKERHAM, Appellant,
v.
UNITED STATES FIDELITY & GUARANTY COMPANY, et al., Appellee.
No. 21382-CA.
Court of Appeal of Louisiana, Second Circuit.
April 4, 1990.
*528 R. Stuart Wright, Natchitoches, for appellant.
Mayer, Smith & Roberts by David F. Butterfield, Shreveport, for appellee.
Before MARVIN, NORRIS and LINDSAY, JJ.
NORRIS, Judge.
This is a suit for damages arising out of an intersectional rear-end collision between a Ford pick-up truck and a left-turning 18-wheel tractor-trailer. The plaintiff, Loyd Cockerham, struck the 18-wheeler from the rear on a dark, December morning. Cockerham sued the driver of the 18-wheeler, Merrell LaCaze, his employer, Almond Brothers Lumber Company, and his employer's insurer, United States Fidelity and Guaranty Company, arguing that the trailer on the 18-wheeler was not lighted. The trial court found that the 18-wheeler's taillights, but not its clearance lights, were lighted at the time of the accident. It held that Cockerham was 80% at fault and LaCaze 20%. It awarded Cockerham $10,091.98 in special damages and $20,000 in general damages, to be reduced by his percentage of fault. Cockerham appealed, claiming the trial court erred in concluding that he was 80% at fault. Defendants answered the appeal, contending that the trial court erred in allocating any fault to them and, alternatively, that the award of general damages was excessive. For the reasons expressed, we affirm.
The accident occurred at approximately 6:15 a.m. on December 9, 1985 at the intersection *529 of La. Hwy. 1 and La. Hwy. 509 in Red River Parish. At this time, it was completely dark. There were no streetlights along the highway, but there was a yellow blinking light over the intersection. Cockerham, a 51 year old welder, was driving his 1978 Ford pickup truck north on La. Hwy. 1. This highway is straight, flat and two-laned. LaCaze was also travelling north on La. Hwy. 1, ahead of Cockerham, in an 18-wheeler hauling sawdust. He was waiting under the yellow blinking light to turn left onto La. Hwy. 509 when he felt an impact in the rear. Cockerham collided with LaCaze's left rear end, smashing out the trailer's left brake lights. He left skid marks of 24 feet.
Cockerham testified that he was driving toward the intersection about 55 m.p.h. with his headlights on. He stated that he never saw any taillights, signal lights, or clearance lights on the back of the 18-wheeler. According to Cockerham, the rear of the trailer was completely unlighted. He testified that when he realized the trailer was there, he was too close to stop. He did not notice whether the taillights were working after the collision.
LaCaze testified that when he got to work that morning, he checked the back of the trailer and noticed that the clearance lights were not working but that the taillights were. According to LaCaze, when the headlights are turned on, the taillights automatically turn on. LaCaze stated that after the accident, he walked to the back of the trailer and saw that the right taillights were still working (the left taillights were smashed by the collision). He admitted that the rear of the trailer was black.
Trooper T.F. Carson arrived on the scene shortly after the accident. When he arrived, the left turn signal and the right taillights were on. He testified by deposition that the clearance lights on the 18-wheeler were not working and when he checked the taillights and the left turn signal, sometimes they worked and sometimes they did not. According to Carson, the brake lights failed to operate about one out of four times. Carson believed that this indicated a problem with the wiring. He also stated that there was some dirt on the taillights, but they were still visible.
Cecil Almond, LaCaze's employer, went to the scene about 30 minutes after the accident. He testified that from about 75 to 100 yards away he could see the right taillights working. Almond was qualified as an expert in mechanical engineering. Although his testimony was self-serving, he stated that when Cockerham smashed the left taillights, it could have caused the right taillights to work only intermittently when Carson checked them. On cross-examination, however, he admitted that the problem with the taillights could have been present before the accident.
The trial court expressly found that this was a comparative negligence case. It concluded that the clearance lights on the 18-wheeler were not working, but that the taillights were. The court allocated 80% of the fault to Cockerham and 20% to LaCaze. It awarded Cockerham special damages of $10,091.98, which included property damages and medical bills, and general damages of $20,000 for pain and suffering.

ALLOCATION OF FAULT
Both parties complain that the trial court erred in allocating the percentage of fault. Cockerham contends that the court erred in finding that the 18-wheeler's taillights were operating at the time of the accident; consequently, the defendants should be found to be more than 20% at fault. Defendants argue that the court's factual conclusion that the taillights were working is not manifestly erroneous and should be upheld on appeal. They also claim that the court erred in finding the absence of clearance lights on the trailer a legal cause of the accident. Therefore, according to defendants, Cockerham should be held 100% at fault.
Comparative negligence is used to determine the damage award that is available when each party is found to have some degree of fault. A trier's findings as to percentages of fault are factual and, in the absence of clear or manifest error or an abuse of discretion, must be upheld on appeal. Ortigo v. Merritt, 488 So.2d 1051 *530 (La.App. 2d Cir.1986); Towns v. Georgia Cas. and Sur. Co., 459 So.2d 124 (La.App. 2d Cir.1984). In automobile collisions, the law of comparative negligence will be applied when both drivers are found to be negligent. Ortigo v. Merritt, supra; Benoit v. Hartford Casualty Ins. Co., 478 So.2d 707 (La.App. 3d Cir.1985), writ denied 480 So.2d 745 (La.1986).
When a following motorist collides with a preceding vehicle, he is presumed to be negligent. Anderson v. McCarty, 519 So.2d 324 (La.App. 2d Cir. 1988), writ denied 521 So.2d 1155 (La.1988); Brownell v. Dietz Motor Lines, 503 So.2d 1069 (La.App. 2d Cir.1987), writ denied 505 So.2d 60 (La.1987). This presumption may be overcome when the lead vehicle negligently creates a hazard which the following motorist cannot avoid. Prothro v. Dillahunty, 488 So.2d 1163 (La.App. 2d Cir. 1986). The court, finding that the taillights on the 18-wheeler were working, held that Cockerham had not overcome his presumption of negligence. Cockerham testified that no lights were working on the back of the 18-wheeler. LaCaze testified that when he started that morning, the taillights were working; and that after the accident they were still working. LaCaze's testimony was corroborated by Almond, who also testified that he saw the right taillights working after the accident, and by photographs taken at the scene after the accident. Trooper Carson also testified that the right taillights were working after the accident, even though he later said that when he tested them, they were functioning intermittently. The court expressly noted that LaCaze was "most honest" in his testimony. The trial court's assessment of credibility alone is enough to support its factual conclusion that the taillights were working. Accepting this factual conclusion, we hold that the trial court did not err in finding Cockerham negligent.
The trial court also found LaCaze negligent in not complying with LSA-R.S. 32:308 B, which required the 18-wheeler to have two clearance lights in the rear and two side marker lights and reflectors on the side. LaCaze admitted that he had not complied with this statutory provision. However, defendants argue that the violation of this safety statute was not a legal cause of the accident. See Stephens v. State Through Dept. of Transp., 440 So.2d 920 (La.App. 2d Cir.1983); Martyniuk v. DL-Mud, 526 So.2d 846 (La.App. 1st Cir. 1988). According to defendants, Cockerham's failure to see the taillights was the sole cause of the accident, regardless of whether the clearance lights were working.
If LaCaze had complied with the statute, the trailer would have been more visible from the rear. This would have increased a following motorist's awareness of the trailer at night, perhaps enabling him to brake sooner. The trial court obviously felt that this could have prevented the rearend collision. Therefore, the trial court did not err in concluding that LaCaze's violation of R.S. 32:308 B was a legal cause of the accident.
In sum, our review of the record shows no manifest error in the trial court's determination that both parties were negligent in causing the accident and that the principles of comparative negligence applied. The court reasonably concluded that Cockerham's inattention to what was in front of him was more significant than LaCaze's failure to have a complete set of required lighting on the trailer. Thus, the allocation of 80% of the fault to Cockerham and 20% to LaCaze was within the court's discretion and not manifestly erroneous. Accordingly, the trial court's factual determinations and apportionment of fault are affirmed.

DAMAGES
Defendants contend that the trial court's $20,000 award for pain and suffering was an abuse of its discretion. They complain that since Cockerham was out of bed within two weeks and back to work within six weeks, the award was excessive and should be reduced to $10,000.
A factual finding of pain and suffering is entitled to much deference and will be reversed only on a showing of manifest error. Canter v. Koehring, 283 So.2d 716 (La.1973); Finley v. Bass, 478 So.2d 608 (La.App. 2d Cir.1985). The assessment of monetary damages is discretionary with the trial court and a judgment cannot be reversed absent a showing of an abuse of *531 discretion. LSA-C.C. art. 1999; Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978); Finley v. Bass, supra.
The evidence shows that as a result of the accident Cockerham sustained three fractured ribs, a fractured nose, contusions to his head, two puncture wounds to his lower right leg, two brush burns on his abdomen, and a three inch laceration to his hand which required stitches. After the accident, Mrs. Cockerham took her husband from one hospital to another hospital in Shreveport. She testified that Cockerham was crying, his face was swollen, he was bleeding from cuts on his hand and face, and he was in a state of shock. Cockerham was admitted to Schumpert hospital as an emergency patient; he stayed there for two or three days. After his release, he stayed in bed for two weeks. Six weeks after the accident, he returned to light duty work as a welder and within ten weeks he was performing full duty work.
Admittedly, Cockerham's injuries were not extremely serious or permanently disabling. However, some of the problems lingered for months and a few of the residual effects were permanent. Cockerham testified that his injured leg bothered him for six months and his fractured nose hurt for three or four months. He testified that his chest still hurts when he lifts heavy objects, which has affected his job. He also testified that the accident permanently damaged his sinuses which causes his nose to run more frequently. Mrs. Cockerham stated that her husband still has trouble sleeping as a result of the accident.
Therefore, under the facts of this case, we believe that the trial court's $20,000 award for pain and suffering, although in the upper range, was not manifestly erroneous or an abuse of its discretion. Accordingly, we affirm its general damage award.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed equally to both parties.
AFFIRMED.