597 So.2d 118 (1992)
Kurt M. ROUX and Celestina Cleveland
v.
LOUISIANA POWER & LIGHT COMPANY, INC., the XYZ Insurance Company and Granite State Insurance Co.
No. 91-CA-904.
Court of Appeal of Louisiana, Fifth Circuit.
March 31, 1992.
Rehearing Denied May 18, 1992.
*119 David W. Oestreicher, II, New Orleans, for plaintiffs, appellants Kurt M. Roux and Celestina Cleveland.
George F. Riess, Nora F. McAlister, New Orleans, for defendant, appellee Louisiana Power & Light Co.
Before BOWES, GOTHARD and CANNELLA, JJ.
BOWES, Judge.
Plaintiffs, Kurt M. Roux and Celestina Cleveland, appeal from a decision of the trial court granting summary judgment in favor of defendant, Louisiana Power & Light. We affirm.

FACTS
On April 1, 1988, at approximately 6:45 p.m., plaintiff Kurt M. Roux, was driving north on Behrman Highway at a "moderate" rate of speed. Plaintiff, Celestina Cleveland was a guest passenger in Roux's automobile. It was twilight, not yet dark and it was raining heavily. The vehicle had both windshield wipers and headlights turned on and apparently working properly. Roux's vehicle began to hydroplane, i.e., sliding on the wet surface of the roadway, and he admitted that he lost control of the car.
Roux attempted to regain control of the car, but was unsuccessful. In sliding, it turned 180 degrees to the right, left the roadway, and skidded into an LP & L utility pole which was located in the apex of a winding curve, within three feet of the roadway. The pole was encased in a four foot block of concrete which extended to within twelve inches of the roadway. In his deposition, Roux admitted that he was very familiar with the roadway.
The plaintiffs filed suit against LP & L, its insurer and Roux's insurer.
Upon motion of LP & L, the trial court granted summary judgment, dismissing it as defendant in the suit. In his oral reasons for judgment, the trial court stated: "Why I'm granting it is because this car slid off the street and hit the pole and I don't see where LP & L is responsible for that."
On appeal, plaintiffs allege that the trial court erred in (1) failing to find that LP & L had a legal duty to plaintiffs; and (2) in ruling that plaintiff was negligent.

*120 ANALYSIS
It is a basic tenet of our law that a motion for summary judgment should not be granted unless the pleadings, depositions, answers to interrogatories, admissions on file and affidavits, if any, show there is no genuine issue of material fact, and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966; Dillon v. Louisiana Power and Light, 557 So.2d 293 (La.App. 4 Cir.1990); Toups v. Hawkins, 518 So.2d 1077 (La.App. 5 Cir. 1987).
The duty-risk analysis is utilized to determine legal responsibility in tort claims. There are four relevant inquiries in applying duty-risk:
I. Whether the conduct of which plaintiff complains was a cause-in-fast of the harm;
II. Whether there was a duty on the part of the defendant which was imposed to protect against the risk involved;
III. Whether there was a breach of that duty; and
IV. Damages.

Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364 (La.1984).
The existence of a legal duty is a question of law. In addition, the question as to whether a particular risk of harm is included within the scope of a particular legal duty is also a legal issue to be resolved by the court. Dillon, supra.
Plaintiff, appellant, alleges that LP & L breached its duty in placing the utility pole so close to the road in a curve which created an unreasonable risk of harm to a passing motorist. However, we find that LP & L's action in placing its utility pole next to the roadway is not, in itself, a breach of duty for the following reasons.
In Armand v. Louisiana Power & Light Co, 482 So.2d 802, 803 (La.App. 4 Cir. 1986), writ denied, 484 So.2d 669 (La.1986), plaintiff filed suit, named LP & L as a defendant after she "slammed" into an LP & L utility pole, alleging that LP & L was negligent because it placed the pole too close to the roadway and that the pole caused plaintiff's severe injuries. The facts presented at trial showed that:
Joni Armand, a 20 year old waitress, got off work at 11 p.m. She and her boyfriend, John Kelly, went to a party in LaPlace for three hours, drinking and playing pool. They drove back to Metairie for breakfast, but argued in the restaurant's parking lot. John loaned his car to Joni (a new Toyota) to go home. Instead, she went to a bar in Fat City, arrived about 4 a.m. and met Wayne Clouatre. They talked briefly then Joni left for a West End bar and Wayne followed. There was conflicting testimony that Joni drove between 35-50 mph (35 mph speed limit) in a misting rain on a wet and dark West Esplanade Ave.
Wayne said a car approached from the opposite direction on the two lane street and Joni `got over' to the right. Up to that point Wayne said Joni's driving appeared normal. The Toyota slid to the left, then right and went into a spin. The car jumped a 5-½ inches6 inches curb, slammed sideways into a La. Power & Light Co. pole, and was demolished. The pole was 29 inches30 inches from the curb on the grassy elevated border of a wide, open drainage canal. The car's front wheels stopped a few feet from the canal's sloping embankment.
Joni was taken to East Jefferson Hospital and blood drawn at 6:00 a.m. revealed.30% alcohol content. A crime lab sample taken at 6:50 a.m. showed .23% alcohol content. Joni suffered severe injuries, is a quadriplegic and was interdicted.
In finding that LP & L did not breach a legal duty owed to plaintiff, the court said:
The location of the pole did not create an unreasonable risk of harm. To so hold would create absolute liability. We are cognizant of the inestimable number of poles and trees which line our streets, many next to or a few inches off the roadways. LP & L's pole is no more a legal cause of Joni's injuries than if she had hit an object in the road, lost control, then struck the pole. The pole's location in the elevated, parish approved, designated right of way was not a cause-in-fact *121 of the accident, nor was it a substantial contributing factor. A utility company has no obligation to guard against rare exigencies such as an out of control vehicle leaving a traveled roadway.
Id. at 804. [Emphasis supplied].
We agree with the logic expressed above by our brothers of the Fourth Circuit.
See also Perkins v. State Dept. of Transp. and Dev., 515 So.2d 553 (La.App. 1 Cir.1987), writ denied, 515 So.2d 1114 (La. 1987).
Similarly, in this case, plaintiffs have failed to show a legal duty owed by LP & L. Plaintiffs have attempted to create an issue of material fact by alleging that the placement of the pole so close to the road in a curve created a foreseeable and unreasonable risk of harm, citing Duplissey v. City of Bastrop, 561 So.2d 796 (La.App. 2 Cir.1990). In that case, however, the plaintiff alleged that the risk was known to defendants prior to plaintiff's accident, as follows:
However, we note that a duty to relocate a utility pole may arise when experience has shown that the location of the pole presents an unreasonable risk to the motoring public. If the nature of the street is such that motorists, albeit inattentive or careless, frequently leave the street and hit the pole, the utility company may have a duty to correct the hazard its pole creates if there exists reasonable alternative locations which would minimize the risk of harm. In Lang v. Prince, 447 So.2d 1112 (La.App. 1st Cir. 1984) writ denied, 450 So.2d 1309-1311 (La.1984), South Central Bell was held negligent for failing to remedy a hazard created by one of its utility poles. The pole was placed in the improved shoulder of the road. If a driver left the roadway even partially, he would contact the pole. South Central Bell knew of the danger yet failed to correct it. In none of the defendant's previously cited cases did the plaintiff allege that the utility company had a duty to move a pole due to the company's knowledge of the risk gained from prior accidents.
Id. at 798. [Emphasis supplied].
In the record before us, LP & L filed a statement which it called a "statement of uncontested material facts" which shows that "the pole had not been involved in any other vehicular accidents." Plaintiffs did not sign this statement; however, they apparently did not oppose nor object to the statement either as it is filed in the record.
Plaintiffs allege only that the pole was dangerous because of the concrete bricks around it and because it was "placed so close to the roadway as to create an unusual hazard for passing motorists." However, plaintiffs do not allege that LP & L had a duty to move the pole because of any knowledge of the risk gained from prior accidents.
It is well established that a motorist is under a duty to drive prudently and that this includes the duty to keep control of his vehicle and to keep a proper lookout for hazards. Paige v. Commercial Union Ins. Co., 512 So.2d 507 (La.App. 3 Cir.1987), writ denied, 513 So.2d 823 (La.1987). Roux admitted that he lost control of his car during a heavy rainstorm at twilight and we find, as did the trial judge, that this loss of control was the cause in fact of the accident. Roux did not show that the placement of the pole was a cause in fact of the accident or that the placement created an unreasonable risk of harm to passing motorists. Compare Campo v. Louisiana Power & Light Co., 560 So.2d 966 (La.App. 4 Cir.1990), writ denied, 566 So.2d 396 (La.1990).
We conclude that, without prior knowledge of previous accidents such as was discussed in Duplissey, supra, LP & L owed no duty regarding the location of the pole, under the circumstances of this case, to a driver who lost control of his vehicle at twilight with his lights on in a heavy rainstorm. However, we specifically do not take any position at this time regarding a situation similar or identical to that discussed in Duplissey, supra.
After consideration of the pleadings and the evidence present in support thereof, we find that plaintiffs have failed to show any *122 genuine issue of material fact which would preclude summary judgment in this case.
Accordingly, the judgment of the trial court granting LP & L's motion for summary judgment is affirmed. All costs of this appeal are assessed against appellants.
AFFIRMED.