602 So.2d 240 (1992)
Charles E. McLAIN, et ux., Plaintiff-Appellant,
v.
GLENWOOD REGIONAL MEDICAL CENTER, Orthopaedic Clinic of Monroe, and Dr. Myron Bailey, M.D., Defendants-Appellees.
No. 23747-CA.
Court of Appeal of Louisiana, Second Circuit.
June 24, 1992.
Dimos, Brown, Erskine and Burkett, Monroe by Donald R. Brown, for Charles E. McLain, et ux.
Watson, Blanche, Wilson & Posner, Baton Rouge by René J. Pfefferle, for Glenwood Regional Medical Center.
*241 Before MARVIN, NORRIS and STEWART, JJ.
MARVIN, Chief Judge.
In this medical malpractice action against a hospital, the plaintiffs appeal a judgment rejecting their demands against the Glenwood Medical Center. The judgment was based on the verdict of a jury which effectively concluded that the hospital personnel did not deviate from the standard of care expected of them in their treatment of the plaintiff wife.
The issues are essentially factual. Not finding clear error, we affirm the judgment.

FACTS
The plaintiff wife, Mrs. McLain, a school bus driver afflicted with arthritis, had a history of right knee trouble. She twice underwent unsuccessful arthroscopic surgery. In July 1986, she had a total knee arthroplasty (total knee replacement) which was performed by Dr. Bailey, originally a defendant in this action who was dismissed after the plaintiffs settled their claims against him.
After the total knee replacement, Dr. Bailey administered a local anesthetic and manipulated the knee, attempting to improve the range of motion without success. Dr. Bailey thereafter admitted Mrs. McLain to Glenwood on August 11, 1987, to attempt further manipulation. On August 12, Mrs. McLain, under a spinal anesthetic, underwent further manipulation of her knee. After this was accomplished, Dr. Bailey placed her leg in a cast to temporarily maintain the leg in a fully flexed (sharply bent) position.
After being in the recovery room for almost two hours she was returned to her room about 10:45 a.m. Hospital records show that in recovery she complained of right knee pain at 10 a.m., and in her room at 10:45 a.m., at which time Dr. Bailey was contacted. Thereafter, on the doctor's orders, Mrs. McLain was given medication when she complained of pain on several occasions during the 27 hours after her leg was manipulated and placed in the cast. She was also given medication for sleep.
About 12:30 p.m., August 13, at his wife's request, Mr. McLain found blisters on the top of her leg underneath the cast. Finding Dr. Bailey in the hospital cafeteria shortly afterward, Mr. McLain informed him of the blisters. Dr. Bailey removed the cast at 1:30 p.m. Mrs. McLain suffered third degree burns as a result of the plaster of paris cast that was applied to her leg.
Mr. and Mrs. McLain presented their claim to a review panel of three doctors who concluded that Dr. Bailey's conduct was a factor in the resulting damages, but Glenwood's was not. Her demands against Dr. Bailey were compromised and dismissed. Her demands against the hospital were tried by jury.
In finding that Glenwood personnel did not deviate from the standard of care expected of them, the jury apparently concluded that it was reasonable for the nurses to attribute Mrs. McLain's complaints of pain to the knee manipulation and the flexed position of the leg, and that specific complaints of burning were not made to the nursing personnel.
The trial court denied the McLains' motions for a JNOV and a new trial.

THE BURDEN OF PROOF
In a medical malpractice action against a hospital, the plaintiff must prove that the hospital owed the plaintiff a duty to protect against the risk involved, that the hospital breached that duty, that the plaintiff suffered an injury, and that the hospital's actions were a substantial cause in fact of the injury. Smith v. State through Dept. HHR, 523 So.2d 815 (La. 1988).
A hospital must exercise the requisite amount of care toward a patient that his or her particular condition may require. Hunt v. Bogalusa Community Medical Center, 303 So.2d 745 (La.1974); Brown v. E.A. Conway Memorial Hosp., 588 So.2d 1295 (La.App. 2d Cir.1991).
*242 Whether a hospital has breached the duty of care it owes to a particular patient depends upon the facts and circumstances of the particular case. Hunt, supra; Brown, supra. A hospital may be held liable for the negligent conduct of all of its employees, including but not limited to nurses and staff doctors, committed while acting in the course and scope of their employment. Brown, supra.
A two-part test to review a trial court's factual determination is suggested:
1) the appellate court must find from the record that there is a reasonable factual basis for the finding of the trial court, and
2) the appellate court must further determine that the record establishes that the finding is not clearly wrong (manifestly erroneous).
Mart v. Hill, 505 So.2d 1120 (La.1987); Housley v. Cerise, 579 So.2d 973 (La.1991).
Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact are not disturbed on review, even though other reasonable evaluations and inferences may be made. Great deference is given to the findings of the trier of fact, who is more aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said by a witness. Rosell v. ESCO, 549 So.2d 840 (La.1989); Fuller v. Wal-Mart Stores, Inc., 577 So.2d 792 (La.App. 2d Cir.1991).
In the absence of objective contrary evidence or internal inconsistency which would cause a reasonable fact finder not to believe a witness's story, a decision to credit the testimony of one of two or more witnesses can virtually never be manifestly erroneous or clearly wrong. Rosell, supra; Fuller, supra.

RESOLUTION OF ARGUMENTS
The McLains argue that the jury's apparent conclusion that no complaints of burning were made to the hospital staff is clearly erroneous. They emphasize Mrs. McLain's testimony that she told nurses several times that her leg was "burning" and that she was corroborated by Celia Mae Talton and Esther Marcel Hemphill, who visited her in the hospital at different times.
Three nurses who served Mrs. McLain testified they could not recall any specific complaints of "burning," and that they wrote in the hospital records (nurse's notes) that Mrs. McLain made "complaints of pain," for which they administered medication as directed by the doctor. Each nurse testified she would have noted any specific complaints of burning in the record. The supervising nurse of orthopedics at Glenwood testified that all of the nurses involved in Mrs. McLain's treatment reported to her that Mrs. McLain complained of "pain," as they noted on the medical records, but did not complain of "burning."
The McLains' 12-year-old daughter, Tonya, who stayed with her mother through her entire hospitalization, testified that she could not remember her mother specifically complaining of "burning." Mr. McLain also did not testify that his wife specifically complained of "burning."
The jury obviously believed the nurses' testimony, which indirectly was corroborated by their notes and by Mrs. McLain's husband and daughter. Mrs. Hemphill's testimony that Mrs. McLain specifically complained of burning to a nurse in her presence could have been believed by the jury but thought immaterial to liability because Mrs. Hemphill said this occurred about 15 minutes before Dr. Bailey removed the cast.
The testimony of the nurses and the corroborating evidence constitute a reasonable factual basis for the implied finding of jury that no complaints of "burning" were made to Glenwood personnel before 12:30 p.m. on August 13, 1987.
The McLains also argue that Mrs. McLain experienced additional pain and suffering because Glenwood failed to timely discover the blisters. When (the timeliness) what (the condition) should be looked for and responded to by hospital personnel, again is a critical factual determination *243 which is the prerogative of the fact finder in the particular case.
We agree that the "diagnosis" of a condition of a patient should not be made by the patient or depend on that patient's "guess" of the origin of the pain of which she complains. Notwithstanding our general agreement, the determination of what should be done, when, and by whom for a hospitalized patient who is complaining of pain, must not be determined by hindsight, but by the totality of the circumstances. What is timely in one patient's circumstance (hours) may not be timely in another (minutes). Each case must be decided on its own particular facts.
The McLains' medical expert was under the belief that Mrs. McLain had complained of burning to Glenwood employees. On that assumption, he opined that the nurses should have earlier discovered the burns because nurses are required to know that the application of a plaster of paris cast or splint may cause burns.
Two members of the medical review panel testified that the Glenwood nurses met the required standard of care. One of the members effectively explained that a patient commonly experiences a considerable amount of pain for 24 hours following a knee manipulation, that cast burns are rare, and that nurses are generally not instructed or required to observe conditions under the cast.
The McLains further argue that Glenwood is at fault because the nurse failed to call Dr. Bailey at 12:30 p.m. when she was informed of, and saw, blisters on Mrs. McLain's leg. Mr. McLain testified that he went to find Dr. Bailey after he perceived that the nurse would not attempt to do so. The nurse, on the other hand, testified that Mr. McLain told her that Dr. Bailey was already on his way to Mrs. McLain's room when she was told of the blisters by Mr. McLain and that she thought it unnecessary for her to summon Dr. Bailey. Mrs. Hemphill, one of Mrs. McLain's visitors, testified that Mr. McLain was attempting to locate Dr. Bailey when the nurse was applying salve to the burns on Mrs. McLain's leg.
The hospital records show that the cast was removed by Dr. Bailey 60 minutes after the blisters were discovered and were thereafter observed by Dr. Bailey. The jury heard most of the medical witnesses say that this was good "response time."

DECREE
When the conflicting evidence is viewed in the light that most favorably supports the verdict, this record does not allow us to find clear error. The judgment, at appellants' cost, is AFFIRMED.