292 So.2d 341 (1974)
Rachel T. SHINE, Plaintiff-Appellee,
v.
HOUSTON FIRE AND CASUALTY INSURANCE COMPANY, Defendant-Appellant.
No. 12256.
Court of Appeal of Louisiana, Second Circuit.
March 19, 1974.
Blanchard, Walker, O'Quin & Roberts, by Wilton H. Williams, Jr., Shreveport, for defendant-appellant.
Shaw & Shaw by W. M. Shaw, Homer, for plaintiff-appellee.
Before AYRES, HALL and WILLIAMS, JJ.
AYRES, Judge.
In this action, plaintiff, Rachel T. Shine, seeks to recover damages sustained in and by virtue of an automobile accident on August 5, 1970, near the Louisiana-Arkansas state line at the juncture of Louisiana Highway 161 and Arkansas Highway 15. At the time of the accident, plaintiff was a guest passenger of Mrs. J. P. (Ella) Bailey, driver of a 1960 model Ford Falcon automobile insured by the defendant, Houston Fire and Casualty Insurance Company.
For a cause of action, plaintiff alleges that as the car proceeded south on the aforesaid two-lane, hard-surfaced highway *342 at a speed between 30 and 40 miles per hour, Mrs. Bailey suddenly, and without warning, swerved her automobile to the right off the highway, thence back to the left across the center line of the highway, and finally again back to the right off the highway where her car struck the stateline marker constructed of concrete in the form of a map of the State of Louisiana. The car came to a stop about six feet beyond the marker and, thus, in the State of Louisiana.
As a further circumstance in the occurrence, plaintiff alleged, from information and belief, that for some time prior to the accident Mrs. Bailey had suffered from a malady causing her to lose consciousness or control of herself, a condition allegedly well known to herself but unknown to plaintiff; that to drive under such circumstances constituted extraordinary negligence and recklessness.
Upon trial and in brief, as well as in argument before this court, plaintiff also relies upon the doctrine of res ipsa loquitur.
The aforesaid charges of negligence directed to defendant's assured were specifically denied. Defendant, moreover, in its answer, contends that immediately prior to striking the marker Mrs. Bailey sustained a sudden, unexpected, and unanticipated cerebral vascular accident which immediately rendered her helpless, and that, as a consequence, the accident was totally unavoidable on her part.
After trial, the court below found that the erratic movements of Mrs. Bailey's car constituted actionable negligence. The court found, however, that the defendant did not establish by a preponderance of evidence its affirmative defense or exculpate its driver from negligence. In accordance with the aforesaid conclusions, plaintiff was awarded damages in the principal sum of $5,000, the limit of defendant's contractual obligation. From this judgment, defendant appealed.
At the outset, it may be appropriate to point out that the testimony overwhelmingly supports the proposition that Mrs. Bailey was not, and had not been, subject to any malady which would cause her to lose control of the automobile or to lose control of herself. The evidence was entirely to the contrary.
From the record, it can only be concluded that the accident occurred in the manner as alleged by plaintiff. Events preceding the accident and the manner of its occurrence are not in dispute. Plaintiff accompanied Mrs. Bailey on a shopping tour from Homer, Louisiana, to Dodge City, Arkansas, and at the time of the accident the return trip had begun with plaintiff as a guest passenger seated on the front seat to the right of the driver. Immediately prior to the occurrence, Mrs. Bailey backed her car out of a parking area in front of the store of Robert Earl Hicks, in Dodge City, into the highway. Instead of continuing southerly along the highway, Mrs. Bailey, for some unexplained reason, drove her car into a shallow drainage ditch located along the right side of the highway. When plaintiff called Mrs. Bailey's attention to the fact that she was in the ditch, Mrs. Bailey made some unintelligible remark and steered her car out of the depression back onto the highway. After proceeding a short distance, Mrs. Bailey, again for some unexplained reason, veered her car to the left across the center line of the highway pointed toward a building located on the east, or her left side, of the highway. Thereupon plaintiff remarked to Mrs. Bailey that she was in the middle of the roadway. In apparent response to this admonition, Mrs. Bailey steered her vehicle sharply back to the right, left the paved portion of the highway, and struck the Louisiana marker, as heretofore mentioned, at the Louisiana-Arkansas border.
When the vehicle struck the highway marker, its left and middle front were crushed, and that portion of the sign sometimes referred to as the "toe" in the map of the State of Louisiana was broken loose.
*343 Persons in near proximity of the scene of the accident responded with aid to plaintiff and Mrs. Bailey, both of whom were visibly injured. Plaintiff was pulled from the wrecked car. Mrs. Bailey, rational at the time, holding the steering wheel, announced her intention of driving the car back to Homer. Later, she asked plaintiff to take charge of her purse and deliver it to her son. An ambulance was called, and both women were sent to a hospital in Homer.
From the operation of the automobile in the aforesaid erratic manner, criss-crossing the highway and eventually leaving the roadway and striking a stationary object, where the operator does not exculpate himself from fault, the conclusion is inescapable that the driver was guilty of negligence which caused the accident. The principle is so well established that citation of authorities appears unnecessary. But see: King v. King, 253 La. 270, 217 So.2d 395, 398 (1968); Superior Industries, Inc. v. T. Smith & Son, Inc., 187 So.2d 538 (La.App., 4th Cir., 1966); Asen v. Taxicab Bonding Association, 184 So.2d 90 (La. App., 4th Cir., 1966); Marquez v. Miller, 64 So.2d 526 (La.App., Orl., 1953); Alpaugh v. Krajcer, 57 So.2d 700 (La.App., Orl., 1952writs denied, 1952).
The conclusion is also inescapable that one so derelict in duty as to operate a motor vehicle in the manner described must respond in damages for the injuries his negligence caused, unless he is, for some reason recognized in law, excused from responsibility. In this connection, defendant urges a special defense that Mrs. Bailey, immediately prior to the accident, sustained a sudden, unexpected, and unanticipated cerebral vascular accident which rendered her helpless. The question in this regard is whether the proof offered sustains this defense.
In support of its position, defendant offered the death certificate issued by Dr. Donald K. Haynes, coroner, and the doctor's testimony. The admissibility of the death certificate was questioned. No apparent necessity exists requiring a determination of that question inasmuch as the coroner appeared as a witness and was examined and cross-examined, at length, with reference to Mrs. Bailey's death and the cause thereof. In rebuttal of Dr. Haynes' testimony, Dr. Thomas M. Deas was recalled as a witness on behalf of plaintiff. Defendant submits that the coroner was the more competent diagnostician.
Dr. Haynes, a graduate of the L.S.U. Medical School in 1958, received his license to practice after an examination by the State Board of Medical Examiners. He interned at Confederate Memorial Medical Center in Shreveport and did a residency of one year at the Lafayette Charity Hospital in Lafayette. His residency was in the general practice of medicine. His practice in Homer, extending over a period of 12 years, was characterized by him as family practice.
Dr. Deas, likewise a graduate of the L. S.U. Medical School, but of the class of 1941, had a one-year rotating internship followed by 42 months in the Army and 18 months of residency in internal medicine. His residency was at the Charity Hospital in New Orleans. His general practice with the Tatum Clinic in Homer extended over a period of 25 years.
Thus, from this record, it would appear that both physicians are engaged in the same general practice. The record does not support the proposition that the coroner was the more competent diagnostician.
Dr. Haynes made no autopsy on Mrs. Bailey's body in an effort to determine the cause of her death. His conclusion that death was due to an intracerebral hemorrhage arising from a cerebral vascular accident was based upon a superficial examination and from information received in interrogating witnesses such as plaintiff, the ambulance driver, and the state trooper who investigated the accident. Plaintiff, it is true, expressed the opinion that Mrs. Bailey had most probably sustained a *344 blackout. This idea is negated by Mrs. Bailey's responses to the admonitions given by plaintiff immediately prior to the occurrence with reference to the manner of her driving, and by the fact that, immediately following the accident, Mrs. Bailey was completely rational. As already noted, she expressed a determination to drive her car back to Homer and, moreover, directed plaintiff to take charge of her purse and deliver it to her son. Mrs. Bailey conversed with witnesses who arrived immediately following the accident and was conscious even after the ambulance arrived to take her and plaintiff to a hospital.
Dr. Deas was present at the hospital when the ambulance arrived. Mrs. Bailey appeared to be in the worse condition; thus, the doctor first turned his attention to her. To him, at the time, it instantly appeared that Mrs. Bailey was dead. He checked her for breathing, but she was not breathing. He checked her heart, but it was not beating. The pupils of her eyes were dilated and did not react to light. Her body was getting cool. He concluded that Mrs. Bailey was dead and directed that the coroner be called.
Dr. Deas' opinion was that it was impossible to make a diagnosis of the cause of Mrs. Bailey's death without an autopsy and a complete examinationthat a determination of the cause of death could not be made through a superficial examination.
It was pointed out that sufficient psychic trauma in the accident could have produced excitement adequate to precipitate a number of types of vascular illnesses such as an aneurysm or weakness of a blood vessel and increased blood pressure where a weakened blood vessel might disrupt; moreover, it appears that a statement of a lay witness to the effect that the deceased must have blacked out can form no basis of opinion, medically speaking, as to a cause of death.
That Mrs. Bailey may have suffered a cerebral vascular disturbance has not been established to any degree of either medical or legal certainty. A holding to the contrary would of necessity be based upon pure speculation and conjecture. Thus, the special defense upon which defendant relies to exculpate itself from liability has not been established.
From the conclusion reached that the record establishes negligence on the part of Mrs. Bailey as the sole, proximate cause of the accident, the application of the doctrine of res ipsa loquitur is unnecessary to determine.
With respect to the injuries sustained by plaintiff, Dr. Deas administered first aid upon her arrival at the hospital, but, on her insistence, she was permitted to return to her home. However, on the following day she returned and received a "shot" from Dr. S. A. Tatum, who has now retired from practice. Within another day or two, plaintiff again reported to Dr. Deas who caused her to be hospitalized for some eight to ten days. His initial findings were that plaintiff suffered physical shock, bruises, and contusions, a sprained neck, and chest injuries. Because of these injuries sustained in the accident, plaintiff suffered pain, particularly from the effects of the neck sprain, which continued to the time of trial some two years following the accident.
Plaintiff was a domestic servant. Over many years she had two employers, one of whom was Mrs. Bailey. Her wages were low, a bare minimum for even domestic services. The findings of the trial court with respect to plaintiff's entitlement of damages for pain and suffering, future pain and suffering, permanent injury to her neck and chest, past medical expenses, and loss of earnings to date of trial exceeded the maximum contractual liability of defendant. Recovery was allowed in accordance with defendant's contractual obligation in the sum of $5,000. We find no abuse of the "much discretion" vested *345 in the trial court in making this determination.
The judgment appealed is accordingly affirmed at defendant's costs.
Affirmed.