11MARVIN, Chief Judge.
In this action for damages arising when the decedent’s automobile crashed into the rear of Plaintiff Fuller’s car that had been stopped for about 30 seconds in response to a red light, in the same lane of travel on the Shreveport Road in Minden, Fuller and his wife, who asserts her consortium claim, appeal a judgment rejecting their demands against decedent, decedent’s liability insurer and Fuller’s underinsured motorist [UM] insurer.
Citing Brannon v. Shelter Mut. Ins. Co., 507 So.2d 194 (La.1987), the trial court con-eluded that the two insurers proved, by clear and convincing evidence, the affirmative defense that the accident was caused solely by decedent’s unforeseeable heart attack rendering him suddenly unconscious. The trial court did not consider the decedent’s presumed fault as the rear-ending driver, or whether the evidence was sufficient to overcome that presumption.
Respectfully disagreeing that the evidence meets the standard of clear and convincing evidence as discussed in Brannon and cases cited therein, we reverse and render judgment in favor of Fuller, remanding for further proceedings in this bifurcated trial.
PREFACE
Defendants’ expert witness opined that the accident “was more likely than not” caused by the decedent’s heart condition and his [unforeseen] heart attack producing sudden unconsciousness. The same witness opined, however, that decedent’s blood contained .08 grams percent alcohol after the accident and that decedent had been markedly intoxicated sometime before the accident because he had not had a drink in the last hour of his life.
Other witnesses established that decedent drank beer with a friend at least until about 8:00 p.m. the night before the accident and talked on the telephone to his ex-wife during the early morning for more than two hours after 2:00 a.m. |2Pecedent then awoke his 14-year-old son between 6:00 and 6:30 a.m. and drove him to school about 7:40 a.m., about two hours before the accident. Otherwise, the record does not show the whereabouts and actions of decedent during the 12 or so hours before the accident at 9:35 a.m.
We find the trial court legally erred because the defendant insurers did not produce evidence that overcomes the presumption that the decedent was at fault and that meets the Brannon standard of clear and convincing evidence to prove the affirmative defense of unforeseeable sudden loss of consciousness. The elear-and-eonvincing standard requires that the evidence negating decedent’s fault be strong enough, highly probable, more than probable but less than beyond a reasonable doubt, to establish decedent’s freedom from all fault to the exclusion of any *724 reasonable hypothesis to the contrary. Brannon, at pp. 196-97.
Livaudais v. Black, 13 La.App. 345, 127 So. 129 (Orl.1930), discussed the rationale of an auto driver’s defense to a passenger’s negligence claim which asserted that the cause of the accident — the driver’s temporary blind spell — was sudden and unforeseen. We emphasize that court’s comments:
... If the accident resulted from the defendant suddenly becoming blind as a result of drinking alcoholic liquor, which, he was advised by his doctors, would tend to produce such a condition, then the defendant would be at fault, and plaintiffs would be entitled to recover.... [I]n order to bar recovery on the ground of ... a fortuitous event or an act of God ... defendant must show that he was free from fault and negligence, and that the accident resulted entirely from means beyond his control [that is, that it was caused] ... solely and only by defendant suddenly becoming blind through no fault of his own[.]
127 So. at 129-32. Our brackets.
The same standard applies under Brannon, cited swpra: The party asserting the affirmative defense of sudden unconsciousness must show
that the accident resulted from ... unforeseeable circumstances beyond his control (and to which he did not contribute), [that is,] ... that his conduct in no wise contributed to the accident.... [I]n order to be | ^exonerated, he must establish his freedom from all fault ... by clear and convincing evidence.
507 So.2d at 196-97. Italics in original.
Brackets and boldface supplied.
DISCUSSION
The accident occurred about 9:35 a.m. on Friday, October 14, 1994, when Fuller stopped his car behind another car on the Shreveport Road (U.S.Hwy.80) in Minden in response to a red light at the intersection of the four-lane highway with Erwin Thompson Boulevard. After Fuller was stopped about thirty seconds, the automobile driven by Mack Henry Green crashed into the rear of the Fuller ear, propelling it into the car that had stopped ahead of Fuller. The three vehicles were in the same lane of travel. Green’s car left no skid marks.
The impact broke the driver’s seat of the Fuller vehicle and rendered Fuller momentarily unconscious. When Fuller came to and looked to his rear at the car that rear-ended him, he saw the driver (Green) sitting upright and motionless. Hearing the horn of Green’s car sounding a moment later, Fuller looked back again to see Green slumped over the steering wheel.
The investigating police officer, Scotty Tucker, who arrived shortly after the accident and checked first on Green, found Green was blacked out, but with a pulse and breathing. Green had money [some dollar bills and change] clutched in his left hand and was not responsive to Officer Tucker. While Tucker then checked on Fuller in the forward car, emergency medical personnel, who arrived on the scene “minutes” after the officer, ministered to Green and transported him by ambulance to the Minden Medical Center. Tucker looked for and noted the absence of skid marks at the scene of the collision.
14MedicaI efforts to resuscitate Green proved unsuccessful and he was pronounced dead at 10:19 a.m. The attending physician at Minden Medical Center surmised that Green had a heart attack or stroke. The Webster Parish deputy coroner requested that an autopsy be performed by Bossier Pathology, noting that the “car wreck” was an “other significant condition contributing to death but not resulting in the underlying cause,” and that the “circumstances of death” was “apparent heart attack or stroke.”
Dr. George McCormick, forensic pathologist and coroner of Caddo Parish, performed the autopsy at Bossier Pathology. His autopsy led him to conclude the cause of death was acute cardiorespiratory failure due to a probable cardiac arrhythmia. The autopsy revealed that the heart muscle sustained some acute loss of oxygen no more than six hours, and possibly as little as “minutes,” before death. Dr. McCormick found Green had severe coronary arteriosclerosis and that he had also sustained a myocardial infarction *725 seven to ten, possibly 14, days before death. Green had suffered progressive damage to his heart over a period of months, if not years, before the accident, according to Dr. McCormick.
Green’s liver and pancreas showed “marked scarring,” leading Dr. McCormick to conclude he had been intoxicated a number of times over a number of years. He also found a more recent “fatty change” in the liver indicating that Green had been, within 72 hours of his death, “markedly intoxicated.”
Dr. McCormick found Green had a blood alcohol content of .08 grams percent alcohol at the time of death, which was pronounced by the attending physician and by the Webster coroner at 10:19 a.m.
| gHaving rear-ended the stopped Fuller car in the same lane of travel, Green is presumed to have been negligent in causing the accident. Defendants have not met their burden of overcoming this presumption. Chambers v. Graybiel, 25,840 (La.App.2d Cir. 6/22/94), 639 So.2d 361, writ denied. Unforeseeable and sudden loss of consciousness has been recognized as a defense, but only with rare success, in some similar circumstances. See Brannon, supra, and Comment thereon, 35 Loy. L.Rev. 1377 (1990), and cases discussed therein.
A defendant driver who suffers the unforeseeable sudden loss of consciousness is deemed not to have been negligent. The defense, if successfully established, reheves not only the defendant driver, but also his automobile liability insurer and the plaintiffs uninsured motorist insurer, of liability to the injured plaintiff, who could not have taken any action to anticipate or avoid the occurrence of the unforeseeable event upon which the defense is based. This is in contrast to other affirmative defenses such as comparative negligence, over which the plaintiff does have control. Consequently, the Louisiana case law, unlike the law of some other states, requires a much higher burden of proving this particular affirmative defense by more than a mere probability that an unforeseeable sudden loss of consciousness occurred. See Brannon and Comment, cited supra.
Brannon adopts the term clear and convincing evidence as an “intermediate burden,” something “highly probable,” “exceptionally strong,” “less than proof beyond a reasonable doubt” but “much more” than “probable” or “preponderan[t],” which “establish[es the defendant driver’s] freedom from all fault,” to the exclusion of “any other reasonable hypothesis as to the cause of 16the accident.” 507 So.2d at 196, 197. See also Reliance Ins. Co. v. Dickens, 279 So.2d 234 (La.App. 2d Cir.1973).
In reaching its conclusion that the unforeseen sudden loss of consciousness was proved by clear and convincing evidence, the trial court did not consider Green’s presumed negligence or other hypotheses of Green’s fault in accord with the Brannon standard. This record does not show Green’s freedom from all fault to the exclusion of other reasonable hypotheses.

The Medical Records

We agree that one reasonable hypothesis is Dr. McCormick’s stated opinion that the cause of the accident “more likely than not was due to [Green’s] heart condition and his heart attack.” Dr. McCormick also agreed that “if the medical records reflect no ... limitation of [Green’s] driving at or near the time of this incident and ... no indication ... of any doctor instructing [Green] that he is going ... to have a heart attack, [those circumstances] would be consistent with [Green] not foreseeing that when driving from a school ... that he’s going to have a heart attack.” Our emphasis and brackets.
Green’s medical records in evidence, however, state that when seen in the Schumpert Medical Center in 1993, “[Green said he] drinks about a half case of beer on weekends only_[that Green has] possibility of cere-brovascular insufficiency and [that Dr. Schwendimann] recommended continued reduction of risk factors to [his] having [a] stroke, including blood pressure control, discontinue tobacco use and alcohol use ... [and begin] aspirin therapy.” Our brackets and emphasis. Other Schumpert medical records note that Green stated he drinks “several six packs of beer a week.”
*726 |7Even should we assume for the sake of argument that the “more-likely-than-not” opinion by Dr. McCormick meets the much higher Brannon standard, we emphasize other opinions or agreements by Dr. McCormick that enervate Dr. McCormick’s more-likely-than-not opinion and other circumstances that present reasonable hypotheses that Green’s loss of consciousness, even if it preceded the impact as Dr. McCormick opined, could have been neither sudden [without warning] nor unforeseeable.

Other Hypotheses

Green’s blood was .08 percent alcohol at the time of death, but Dr. McCormick detected no smell of alcohol in the contents of Green’s stomach in the later autopsy. As noted, Green’s medical records show that his doctors had advised him to “discontinue” drinking alcohol in order to reduce his risk of a stroke. Dr. McCormick agreed that Green’s risk of having a stroke and a heart attack was increased by the consumption of alcohol. The condition of Green’s liver, according to Dr. McCormick, showed that Green had been markedly intoxicated within 72 hours of his death. His blood alcohol content of .08 percent at 10:19 a.m. indicated to Dr. McCormick that Green had a much higher content before that time. Explaining that the body will metabolize and reduce the percentage of blood alcohol content [BAC] at the rate of .015 to .02 percent per hour, Dr. McCormick opined that Green’s BAC, if he quit drinking one hour before death at 10:19 a.m., as his stomach smell indicated, would have been .095 or .10 percent one hour before death. See presumptions in La. R.S. 32:662. In any event Green’s blood alcohol content was higher than .08 percent as he approached the traffic ahead of him on the Shreveport Road just before the 9:35 a.m. accident.
| ¡¡Moreover, Dr. McCormick stated that a “majority” of the time a severe heart attack [causing visible damage to the heart muscles] manifests itself to the victim by gradual warning symptoms of its onset, the perception of which warning symptoms “might be dull[ed]” by the victim’s “drinking seriously.” Dr. McCormick also explained that some heart attacks are “silent,” the onset of which produces no warning symptoms, but said he would “expect” Green’s heart attack of 7 — 14 days before the accident to have produced warning symptoms, saying, “the person experiencing it would know it ... more probably than not.” Dr. McCormick was not asked this question about Green’s fatal attack on October 14, 1994. Green could have had warning symptoms of a heart attack within minutes or seconds of the 9:35 a.m. accident. Warning symptoms could have been dulled by Green’s .08 BAC. On this record, an hypothesis either way in each of the stated instances would be reasonable.
The autopsy showed Green had a fractured rib, which had separated from his rib cage and which, at some unknown time, simultaneously with the fracture or later, punctured his lung. The absence of significant bleeding in the area of the lung puncture indicated to Dr. McCormick that Green’s heart had stopped pumping before the fractured rib punctured his lung and that Green lost consciousness before impact.
The patrol officer, Tucker, who investigated the accident, found that Green had a pulse when he arrived on the scene. The ambulance attendants who attended to Green did not testify. Fuller first saw Green sitting upright behind the steering wheel. A moment later when he heard Green’s car horn sounding Fuller again looked back and saw Green slumped over the steering wheel. Whether Green was wearing a seat belt at the time of the accident we do not know. Likewise we do not know how or with what force Green’s chest 19Iater struck his steering wheel, making sufficient contact to cause the car horn to sound. Fuller simply saw him “slumped” over the steering wheel.
Green was alone in his automobile. We do not know what Green experienced in what sequence as he drove on the Shreveport Road other than what Fuller saw once he regained his senses after the impact. Officer Tucker found Green unresponsive, but breathing and with a pulse, and saw emergency medical personnel working on him and transporting him away to the hospital.
The parish medical examiner, who saw Green’s body after death, reports that Green was last seen alive by Bayou Ambulance *727 personnel. The report states the time of injury to be 9:35 a.m. and the time of death to be 10:19 a.m. The physician at Minden Medical Center who attended to Green and pronounced him dead at 10:19 a.m. was not called to testify about the attempts made to resuscitate Green by the ambulance personnel or by himself or about Green’s condition in the hospital. We do not know when or how Green’s rib fractured, whether in the impact, the later “slumping,” or in attempts to resuscitate him at the scene or in the hospital. We simply know the time of the accident and the time of death and what the autopsy revealed to Dr. McCormick.
Officer Tucker reported that Green had a pulse when Tucker checked him shortly after the accident. Since Dr. McCormick said Green’s heart had stopped before the lung puncture occurred, it could reasonably be concluded that this did not occur until after the impact, rather than concluding Tucker was mistaken. We do not know when or how the fractured rib separated from the rib cage or punctured Green’s lung, whether at the time of impact or when he was treated by ambulance personnel or by others in the hospital.
The record shows Green slept little, if at all, the night before the 9:35 a.m. accident. After working on the day before the accident, Green drank beer | i0with a visitor until about 8:00 p.m., spoke with his ex-wife on the telephone from 2:00 a.m. to 4:30 a.m., and got his son up for school between 6:00 and 6:30 a.m. We do not know whether or not Green was inattentive and neglected to observe traffic conditions because of the combination of his elevated BAC and lack of sleep.
We also do not know whether Green, before the accident, was preoccupied with the money he had clutched in his left hand and only saw the Fuller ear when the collision was imminent and unavoidable. When asked about such a hypothesis of Green being .08 percent BAC and “suddenly finding] himself in a position of peril ... with another vehicle right in front of him, would the ... sudden shock of that experience be enough to trigger an MI [Myocardial Infarction] ...,” Dr. McCormick answered:
Yes, sir, sudden fright in an individual in the scenario that you’ve set up, from whatever cause, can precipitate an abnormal rhythm which can include or rapidly progress to stoppage of the heart.
Dr. McCormick later answered defense attempts on redirect to counter the effect of the above hypothesis. Dr. McCormick’s agreement that he had “no medical evidence” of “sudden fright” neither explains nor negates the reasonableness of the hypothesis and of Dr. McCormick’s answer and agreement.
CONCLUSION
The law does not require a plaintiff in Fuller’s circumstances [stopped on a city street at a traffic light] to show specifically what particular negligence of the rear-ending defendant driver caused the accident. Once Fuller established those circumstances, the presumption of negligence applies and the burden effectively shifts to the rearending defendant or his insurer to exculpate that defendant of any fault, however slight, that contributed to the accident. Arceneaux v. Domingue, 365 So.2d 1330, 1335 (La.1978), citing Simon v. Ford Motor Co., 282 So.2d 126, 133 (La.1973); Sherman v. K.D. Auger Trucking, Inc., 607 So.2d 921, 923 (La.App. 2d Cir.1992). The defendant-insurers have failed to show that Green’s conduct in the hours and seconds before the accident did not contribute in any way to Green’s loss of consciousness or to the collision with Fuller’s vehicle. See and compare Livaudais and Brannon, both quoted and cited supra.
The hypotheses of Green’s fault mentioned above are reasonable hypotheses. This record does not allow the conclusions that it is much more than probable that Green’s BAC of more than .08 percent did not contribute in any way to Green rear-ending the Fuller car, or that Green’s holding money in his left hand at the time of the impact is immaterial, or that Green had a fatal heart attack without warning symptoms, causing his heart to stop beating and him to crash, within a heartbeat, into the Fuller car, the impact of which fractured his rib that simultaneously punctured his lung. This record allows the other reasonable hypotheses that Green’s fatal heart attack could have been neither un *728 foreseeable nor sudden, without warning symptoms.
In considering the affirmative defense of unforeseeable sudden loss of consciousness, the trial court erred in elevating to the level of clear and convincing, Dr. McCormick’s opinion that it was “more likely than not” that the accident was caused by Green’s [unforeseeable and] sudden [without warning] heart attack producing immediate unconsciousness.
The clear and convincing evidence standard for the affirmative defense of unforeseeable and sudden loss of consciousness requires that the evidence be strong enough, highly probable, more than probable but less than beyond a reasonable doubt, to overcome the presumption of Green’s fault and to establish Green’s freedom from all fault to the exclusion of any reasonable hypothesis to | i2the contrary. The evidence in this record does not meet that standard. What is more likely than not meets the legal standard for probabilities or preponderance of the evidence in the ordinary case, but not in this case.
We must find the defendant-insurers did not meet their burden of negating the presumption of Green’s fault in this rear-end collision case. See Abadie v. City of Westwego, 94-536 (La.App. 5th Cir. 11/29/94), 646 So.2d 1229; Shine v. Houston Fire & Cas. Ins. Co., 292 So.2d 341 (La.App. 2d Cir.1974). This record simply does not show that it is highly probable that Green was free of any fault and did not contribute in any manner to the accident. Brannon, Livaudais, supra.
DECREE
We reverse and render judgment in favor of plaintiffs, Mr. & Mrs. Fuller, decreeing that the sole fault for the accident in question in this appeal rests with the decedent driver, Mack Henry Green. All costs are assessed equally to the appellees and the matter is remanded to the trial court for further proceedings.
REVERSED AND REMANDED.